LAW OFFICES OF STEPHEN R. WADE
Stephen R. Wade CBN 79219
5030 E. 2nd St. Ste. 260 A
Long Beach, CA 90803
PHONE (909) 575-7597
Email srw@srwadelaw.com

Attorneys for: Interested Party
Lara Fakhoury

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## RIVERSIDE DIVISION

In re:

MAJED FAKHOURY

DEBTOR.

CASE NO. 6:25-bk-15967 SY

CHAPTER 7

**OPPOSITION OF LARA FAKHOURY TO MOTION TO ANNUL THE AUTOMATIC STAY FILED BY WILMINGTON TRUST NATIONAL ASSOCIATION NOT IN ITS INDIVIDAL CAPACITY BUT SOLELY AS TRUSTEE OF THE MFRA TRUST 2015-2**

Date:   November 5, 2025
Time:   9:30 AM
Ctrm:   302

Lara Fakhoury, party in interest herein, (hereinafter "Lara Fakhoury"), submits the following Opposition the Motion to Annul the Automatic Stay ("Motion to Annul") filed by Wilmington Trust National Association, not in its individual capacity but as Trustee of the MFRA Trust 2015-2 ("Movant"). Said Opposition is filed with respect to the following:

1

OPPOSITION OF LAURA FAKHOURY TO WILMINGTON'S MOTION TO ANNUL THE AUTOMATIC STAY

## I. THE MOTION FOR RELIEF

### A. The Movant

The Movant in this case, Wilmington Trust National Association files this Motion not as a creditor in the case or in its individual capacity but solely as Trustee of the MFRA Trust. Movant acknowledges that it holds no interest as the holder of the promissory note or the beneficiary thereof (Motion p. 3, paragraph 1) However, Movant asserts, simultaneously, that Movant is the only creditor or one of a very few creditors, listed or scheduled in the Debtor's case". (Motion p. 2 paragraph 4(a)(1) and p. 5; paragraph (4)(2)(A))

The Declaration of Thomas Abballe (Abballe") filed in support alleges that he is the Vice President of ServiceMac, LLC loan servicing agent for the Movant. Abballe reasserts that after September 4, 2025 the Movant is not the holder or beneficiary of the promissory note or beneficiary of the deed of trust at issue in this matter. Abballe alleges that after September 4, 2025 the Movant is not owed any sum under the promissory note and thus is not a creditor in this case.

The Declaration of Abballe does not provide evidence that the Movant herein has any interest whatsoever in this case as a creditor or party in interest with the promissory note having been fully satisfied by a non-judicial foreclosure sale held on September 4, 2025 at which time he states only that "a third party purchaser submitted the prevailing bid and acquired the Property" (Supplemental Declaration p. 3) The identity of that "third party purchase is not  disclosed.

### A. THE BASIS FOR THE MOTION

The Creditor seeks relief under 11 U.S.C. 362 (d)(1), to annul the automatic stay in this case, "for cause", in that it was filed "in bad faith" and 11 U.S.C. 362(d)(4) based the filing was a part of a scheme to delay, hinder or defraud creditors that involved the filing of multiple bankruptcies.

In support of the request for relief "for cause" Movant argues that this case was filed "in bad faith", Movant asserts that Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents and that other bankruptcy cases have been filed in which an interest in the Property was asserted. (Declaration in Support of Motion p. 10; paragraph 17) In support of the

2

1  latter contention, Movant cites three cases filed not by this Debtor but by his spouse, Lara Fakhoury.

2  Specifically, Case # 6:22-bk-13036-SY; 6:25-bk-13166 SY and 6:25-bk-15107-SY. Conspicuously

3  missing is any prior case filed by the Debtor in this case.

4  Further, Movant contends that it had no prior knowledge of the filing of the within bankruptcy

5  case until September 8, 2025 when the foreclosure trustee and counsel for Movant BDFTW became

6  aware of the filing in this case by way of the filing of an adversary complaint to avoid the foreclosure

7  sale as a violation of 11 U.S.C. 362 case # 6:25-ap01104-SY. (the "Adversary Complaint")

    **B.    Legal Requirements for Annulment of the Stay**

9  In support of the annulment of the stay Movant relies entirely on the decision in *In re: Dorsey*

10  476 B.R. 261, 265-266, which provides little by way of either guidance or authority for this Motion.

11  That case is a bankruptcy trial court decision from Hon. Robert N. Kwan, Bankruptcy Judgment in

12  2012. In that case, the owner of a property transferred ownership "without consideration" to a third

13  party who was then in bankruptcy. The secured creditor got relief from the stay the owner, again,

14  transferred ownership to a third party, Dana Dorsey, again "For No Consideration" with Dorsey filing

15  a petition one day later. The Debtor attested to the fact that she had no interest in that property and no

16  knowledge of its existence. The Court granted in rem relief pursuant to 11 U.S.C. 362(d)(4). None of

17  these facts are present in this Motion and this case has no application to the Motion in this case.

**II.    ARGUMENT**

    **A.    Movant Lacks Standing**

21  As set for the above, Movant admits that is not a creditor in this case. It appears only in its

22  capacity as Trustee of the MFRA Trust 2025-2. That entity is not identified in the moving papers as

23  either a creditor beneficiary of the promissory note or the beneficiary of the deed of trust securing that

24  note. The Motion does identify Barrett Daffin Frappier Treder & Weiss, LLP ("BDFTW") as the

25  substituted trustee under the deed of trust. The purported purchase under September 4, 2025

foreclosure sale is not identified.

Constitutional standing is derived from the case and controversy requirement of Article III of the Constitution and requires a plaintiff to demonstrate "injury in fact, causation, and redressability." *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014)). To satisfy constitutional standing, Thee Aguila must demonstrate "'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (emphasis added).

Movant has not established constitutional standing to seek to annul the stay and has not identified any particular or concrete injury arising from the violation of the stay requiring its annulment. If any person has standing in this regard, it would be the third-party purchaser at the foreclosure sale. (See *In re Malley BAP* unreported decision BAP CC-21-1020-HLG)

B.  **Movant Has Not Met Its Burden to Establish a Basis to Annul the Stay in the Case**

Section 362(d)(1) allows the court to "terminate, annul, or modify the automatic stay" for cause shown. In the annulment context the Ninth Circuit has stated that, "[m]any courts have focused on two factors in determining whether cause exists to grant annulment of the stay; (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." (*In re Nat'l Env't Waste Corp.*, 129 F.3d 1052 (9th Cir. 1997)

i.  **The Movant Had Notice of the Debtor's Interest Prior to the Foreclosure Sale**

4

OPPOSITION OF LAURA FAKHOURY TO WILMINGTON'S MOTION TO ANNUL THE AUTOMATIC STAY

Here, in applying these two tests, the Movant, through the Declaration of Rita Erica Jones, ("Jones") the "Managing Attorney of Foreclosure Operations at BDFTW, the foreclosure trustee under the deed of trust, acknowledged that on August 26, 2025, an unnamed person at BDFTW received a telephone call from an "anonymous" source advising that Debtor Majed Fakhoury filed a voluntary petition under Chapter 13 of the Unites States Bankruptcy Code and was assigned Case No. 6:25-bk-15967-SY (the "Current Case"). Jones also states that at no time prior to September 8, 2025 was BDFTW aware that the Debtor alleged a community property interest in the Property. (Declaration of Erica Jones at p. 3; l. 11-15; and p. 4; l. 1-4)

This testimony is what Movant relies upon to support the first prong of the annulment of the stay, that Movant had no knowledge of the automatic stay in this case as to the community property interest of the Debtor as property of the estate under 11 U.S.C. 541.

In contrast, filed herewith is the Declaration of Benjamin Heston Esq. (Heston)". In it, Heston details a series of contacts and attempted contacts with BDFTW all aimed at advising BDFTW of the Debtor's filing as well as his interest in the Property. In his Declaration, Heston states that:

On at least eleven occasions Heston personally called BDFTW with the explicit purpose of trying to prevent them from conducting a foreclosure sale in violation of the automatic stay in this case. In addition to the call on August 26, 2025, acknowledged by Movant including the fact that Heston was asked if the debtor had an interest in the property and Heston applied in the affirmative. (Declaration of Heston p. 4 ; l. 5-8)

More significantly, Heston details a contact with BDFTW p.m. August 8, 2025 wherein he spoke with someone named Serena who confirmed the foreclosure sale was on and that she had been advised by their "legal department" that because the Debtor was "not on the loan" his bankruptcy

5

OPPOSITION OF LAURA FAKHOURY TO WILMINGTON'S MOTION TO ANNUL THE AUTOMATIC STAY

1 would not affect [their] foreclosure proceedings". (Declaration of Heston p. 4 ; l. 18-24)

2 These conversations were supported by "detailed notes" taken by Heston. (Declaration of Heston p. 4; l. 25)

In addition to these contacts, Heston emailed Darlene Vigil, counsel for Wilmington in this matter stating that the borrower's spouse had filed for bankruptcy and provided the Debtor's name and case number. (Exhibit "A" to Declaration of Heston")

The Court is left to judgment the credibility of Heston, an officer of the court and longtime practitioner in the Bankruptcy Courts of the Central District of California against the "acquired" knowledge of a manager at BDFTW. If Heston is believed, the Movant had full knowledge of the Debtor's claim of an interest in the Property, the filing of his bankruptcy and accompanying automatic stay and made a conscious choice to proceed with the foreclosure sale on the mistaken belief that since the Debtor was not "on the Loan" the stay did not apply.

    ii. <u>This Bankruptcy Case was Not Filed in Bad Faith</u>

The second prong of the test, whether the case was filed in "bad faith" also fails under scrutiny in this matter. In support, Movant argues that three prior filings by Lara Fakhoury set the stage for this filing by her spouse as a pattern designed to hinder, delay or defraud, creditors in the case. In fact, the first case cited by Movant 6:22-13036-SY was filed on August 12, 2022. The Notice of Default which gave rise to this foreclosure sale was filed on September 24, 2024, over two years after the 2022 case was filed and not to hinder, delay or defraud that foreclosure.

The two prior cases filed by Lara Fakhoury were, indeed, filed in an effort to stop the foreclosure sale. The first, Case No. 6:25-bk-1316 was filed on May 15, 2025. As discussed in the Declaration of Heston, that case was dismissed, prior to the filing of any motion for relief by Movant

The second case filed by Lara Fakhoury was filed on July 25, 2025 did not result in an extension of the automatic stay due, in part to the allegation that Lara Fakhoury failed to make two (2) post-petition adequate protection payments to Movant. In fact, the Declaration of Heston shows that these payments were, in fact, made by Lara Fakhoury. The second case filed by Fakhoury was voluntarily dismissed by her on October 2, 2025.

That leaves only the current case of this Debtor. The Debtor in this case filed a voluntary Chapter 13 proceeding in order to attempt to reorganize and to keep the family residence. That case was filed on August 25, 2025 as an emergency, "short form" filing. As discussed previously, notice of that filing and of the Debtor's interest was provided in writing and by phone to Movant immediately thereafter. Nonetheless, Movant chose to ignore the stay and complete a foreclosure sale on September 4, 2025 in clear violation of the automatic stay.

The Debtor responded by first, filing an adversary proceeding to set aside the foreclosure sale as a violation of the automatic stay, Case no. 25-ap-01104-SY, which Adversary is currently pending. Second, on October 1, 2025 the Debtor voluntarily converted this case to one under Chapter 7 to place the Property in the hands of a Chapter 7 Trustee to preserve the estate's interest for the benefit of creditors in the case. That Adversary Case is pending.

### C.   This Case Was Not Filed With the Requisite Intent to Hinder Delay or Defraud its Secured Creditor.

A scheme to delay or hinder does not require an intent to defraud, but it does require an unlawful intent. Section 362(d)(4)'s language combines two phrases already known at law. The Criminal Code has for many years proscribed "schemes" to defraud. e.g., 18 U.S.C. §§157, 1341. Meanwhile, the Bankruptcy Code has from its inception (1) denied a discharge for a debtor who

renders property unavailable "with intent to hinder, delay, or defraud a creditor," 11 U.S.C. §727(a)(2); and (2) permitted the trustee to avoid prepetition transfers made "with actual intent to hinder, delay, or defraud any entity," 11 U.S.C. §548(a)(1)(A). Congress in BAPCPA also added a limitation on the homestead exemption relating to a debtor's "intent to hinder, delay, or defraud a creditor."

Each of those provisions owes its language to the Fraudulent Conveyances Act of 1571 (13 Eliz. 1. c. 5), which prohibited transfers made with "intent to delay, hinder, or defraud creditors and others." Because §362(d)(4) borrows old common law and statutory terms, Congress presumably meant to adopt the "cluster of ideas that were attached to each borrowed word"; obviously transplanted language "brings the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733 (2013). The Court therefore discerns the meaning of "scheme" and "delay, hinder, or defraud" using the law's longtime understanding of those terms. See, e.g., *In re Addison*, 540 F.3d 805, 811 (8th Cir. 2008).

    i.    <u>The Actions of the Debtor and/or his Spouse do Not Constitute an Intentional Scheme</u>

The Declaration of Benjamin Heston, filed herewith, sets for a complete history of the filings of Lara Fakhoury in 2022, and 2025. With reference to the 2022 case, shortly after confirmation of a plan in that case, Ms. Fakhoury secured funds from a family member sufficient to cure the default to the secured creditor in full resulting in a voluntary dismissal of that case. There is nothing to suggest that this case was in any manner abusive.

The second filing by Ms. Fakhoury in May, 2025 was the result of the fact that her spouse, the Debtor in this case, was diagnosed with cancer with the resulting hospitalizations recovery and medical expenses leading to a default in payments on the Residence. That Chapter 13 filing was predicated on the good-faith hope that Majed would secure new employment sufficient to meet the

payment obligations on the Residence under a Plan. While that employment did not come about in time to fund the Plan, Ms. Fakhoury did obtain sufficient funds from the family to, cure the default in post-petition payments and Plan payments. At the Confirmation Hearing, Heston requested a continuance of the confirmation hearing to pay these funds to the trustee and the mortgage servicer. This Court denied that continuance and dismissed the case.

On July 25, 2025, and with the prospect of new employment by the Debtor herein at hand, Ms. Fakhoury filed a second Chapter 7 case. Because of the prior filing in 2025, Ms. Fakhoury had to obtain an extension of the stay in her case to go forward with confirmation of a Plan in that case and save the Residence.

Prior to the hearing on that Motion to Continue the Stay, Ms. Fakhoury made all required post-petition Plan Payments and adequate protection payments to the Trustee and the Secured Creditor. The Trustee was prepared to recommend confirmation. (Declaration of Heston, p. 3; l. 20-22)

At the hearing, counsel for Wilmington opposed the extension of the stay contending that such post-petition payments had not been made. At a subsequent hearing on a Motion for Reconsideration, Ms. Fakhoury supplied proof of such payments.

The only remaining concern registered by the Court at the hearing on the Motion to Continue the Stay was that the debtor in that case had not been "transparent" in disclosing that Mr. Fakhoury's new employment was by a company owned by his brother.

Understanding that confirmation of a Plan in Ms. Fakhoury's second case was not a certainty, Heston states that after dismissal of the May, 2025 case, the Residence was listed for sale. The Residence has received several offers to purchase at the listing price of $1,500,000. The most recent offer at $1,500,000, all in cash at close, was accepted by Ms. Fakhoury, subject to approval by the

---

9

**OPPOSITION OF LAURA FAKHOURY TO WILMINGTON'S MOTION TO ANNUL THE AUTOMATIC STAY**

1  Trustee in this case and by this Court. After deduction for broker's fees of 4% and costs of sale
2  estimated at 1%, this sale will net approximately 1,425,000. The payoff of the Note secured by the
3  first deed of trust is approximately $825,000 leaving a net of approximately $600,000.

4  Ms. Fakhoury, and the Debtor have reached an agreement that both will waive any homestead
5  interest in the Property to the extent it impairs the ability of the estate to pay all creditors in this case
6  including secured, administrative, priority and general unsecured claims. (a "Carveout") The net funds
7  from sale are well in excess of the funds necessary to accomplish this, paying all such claims in full.
8  

9    ii.    <u>Acting with Intent to "Delay, Hinder or Defraud Must Involves Actual Intent.</u>

10  The two primary rights which are granted to an individual debtor in a Chapter 7 bankruptcy
11  are 1) the automatic stay under Section 362(a)(2) or (3) and 2) a Discharge under Section 727.
12  However, the Code specifies certain conduct by a debtor which may result in one or both of those to
13  be denied. Under Section 727(a)(2) a discharge can be denied if, the debtor, "with intent to hinder,
14  delay or defraud a creditor……." commits a wrongful act.
15  

16  11 U.S.C. 548(a)(1)(A) provides that a trustee can avoid any transfer by the debtor pre-petition
17  when the debtor "made such transfer…..with actual intent to hinder, delay, or defraud…."

18  This language is mirrored in Section 362(d)(4) with regards a debtor losing his right to an
19  automatic stay if "the court finds that the filing of the petition was part of a scheme to delay, hinder
20  or defraud creditors…….."
21  

22  This phrase has a long history of use in the context of wrongful conduct by a debtor against
23  his creditors. The Uniform Fraudulent Transactions Act codified in California Civil Code in the
24  context of fraudulent conveyances and incorporated into the Bankruptcy Code at Sections 548, is
25  replete with cases describing such conduct. *In re Duncan & Forbes Development, Inc.*, 368 B.R. 27,
26  
27  
28  

10

**OPPOSITION OF LAURA FAKHOURY TO WILMINGTON'S MOTION TO ANNUL THE AUTOMATIC STAY**

34 n.12 (Bankr. C.D. Cal. 2006). The phrase "has always been held to require … that there shall be actual fraud." *Coder v. Arts*, 213 U.S. 223, 242 (1909). And "actual fraud" involves moral turpitude or intentional wrong. *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 355, 360 (2016).

While Section 362(d)(4) is written in the disjunctive and does not require that all three elements be shown, at its core, each element must involve a wrongful or unlawful intent. The debtor who structures his assets to maximize exemptions, within the limits of the law, does not violate the law even though the intent of those actions is to "hinder or delay" collection by his creditors. *In re Smiley* 864 F. 2d 562 (1988)

Many, even most Chapter 13 petitions are filed in an effort to save a family home. As such every Chapter 13 has the effect of "hindering and delaying" a foreclosing creditor since that is the very point of filing the petition. Movant asserts that the filing of two petitions in Chapter 13 by Lara Fakhoury laid the groundwork for a "scheme" to hinder, delay or defraud" the secured creditor in this case. However, the Declaration of Heston filed in support hereof shows that both of these petitions were not filed in bad faith in that each filing was done in order to confirm a Plan of Reorganization in order to preserve the equity in the Residence and to pay creditors in accordance with their statutory priorities.

In each case the respective debtors filed all required filings timely, paid all post-petition obligations required of them. There are no allegations of any pre-petition conduct on their part which would make them either ineligible or unsuitable for proceeding in a Chapter 13 petition. No such intent was recognized by the Court in that no finding was made as to *"in rem"* relief under Section 362(d)(4) as abuse due to serial filings. In this regard, it must be noted that the Code does not place any impediment to a first filing by this Debtor to filing a petition under any chapter of the Code for which

1 he is a qualified debtor.

2 In a continuing effort to save the Residence, the Debtor in this case filed a Chapter 13 petition on August 25, 2025. There was no legal bar against that filing. In fact, other than in coordination with the prior cases filed by Debtor's spouse, there is absolutely nothing that would constitute bad faith or abuse in this current case. That case was converted to one under Chapter 7 voluntarily by the Debtor on October 1, 2025. In order to grant the within Motion to Annul the Stay, the Court must find that this case was an abusive filing and that this filing meets the dual criteria discussed above.

iii. <u>Any Wrongful Conduct of the Debtor(s) Should Not be Attributed to the Trustee or the Estate.</u>

Since the case was converted to Chapter 7, all right title and interest in and to the Property is property of the estate under Section 541. The Trustee in this case, Charles Daff, ("Daff") has control over the disposition of all of the asset. As such, Daff is charged with the liquidation of the assets of the estate for the benefit of creditors in the case.

The Ninth Circuit has addressed this issue in its decision in *In re Padilla*, 222 F.3d. 1184 (9th Cir. 2000). There, the Trial court found that the Debtor's Chapter 7 case should be dismissed pursuant to 11 U.S.C. 707(a) for bad faith. *In Padilla*, supra, the Circuit reasoned that a Chapter 7 liquidation does not involve an ongoing debtor-creditor relationship after discharge a, therefore, chapter 7:

> should be available to any debtor regardless of whether the debtor's motive in seeking such a remedy was grounded in good faith.

(*In re Padilla*, p. 1193)

Similarly, in seeking to annul the stay in a Chapter 7 case, the rationale for taking action against the debtor in a chapter 13 case in which the debtor has abused the bankruptcy process for its own

benefit falls. In a chapter 7 filing, the debtor has irrevocably granted to his estate for the benefit of his creditors all of his property to be administered and liquidated by a chapter 7 trustee. By it design a chapter 7 has a purpose beyond merely protecting assets for the debtor's own benefit or to delay the disposition of those assets in order to hinder, delay or defaud its creditor, since they are beyond the debtor's control.

The Ninth Circuit joins the Eighth Circuit in this regard finding that:

Whether bad faith can provide "cause" for dismissing a Chapter 7 bankruptcy petition pursuant to Section 707(a) is a matter of first impression for this court. The Sixth Circuit and a host of bankruptcy courts that have considered the issue have found bad faith to be a ground for dismissal under S 707(a). See, e.g., Zick, 931 F.2d at 1127 (bad faith can provide cause for a S 707(a) dismissal); In re Lacrosse, 244 B.R. 583, 587 (Bankr. M.D. Pa. 1999) (a Chapter 7 petition may be dismissed under S 707(a) for lack of good faith in filing the petition); In re Smith, 229 B.R. 895, 897 (Bankr. S.D. Ga. 1997) (debtor's lack of good faith in filing bankruptcy petition will constitute "cause" for dismissal of Chapter 7 case); In re Griffieth, 209 B.R. 823, 831 (Bankr. N.D.N.Y. 1996) (holding dismissal was justified under S 707(a) because the debtors' case was not filed in good faith); In re Sky Group Int'l, Inc., 108 B.R. 86, 90 (Bankr. W.D. Pa. 1989) (a showing of bad faith can result in dismissal under S 707(a)). Taking a different view, the Eighth Circuit and several bankruptcy courts have found bad faith as such to be an improper basis for a S 707(a) dismissal. See, e.g., Huckfeldt, 39 F.3d at 832 (stating that while some conduct giving rise to dismissal underS 707(a) can be characterized as bad faith, the issue is properly whether the petition should be dismissed "for cause"); In re Etcheverry, 242 B.R. 503, 506 (D. Colo. 1999) (holding that because there is no explicit "good faith" requirement in Chapter 7, bad faith cannot constitute "cause" for dismissal under S 707(a)); In re Landes, 195 B.R. 855, 855 (Bankr. E.D. Pa. 1996) (holding that a good faith filing requirement cannot be read into S 707(a), embracing In re Latimer, 82 B.R. 354 (Bankr. E.D. Pa. 1988), and tacitly overruling In re Marks, 174 B.R. 37 (Bankr. E.D. Pa. 1994)). As is discussed below, we agree with the Eighth Circuit that bad faith as a general proposition does not provide "cause" to dismiss a Chapter 7 petition under S 707(a).

Dated: October 27, 2025

Respectfully Submitted,

LAW OFFICES OF STEPHEN R. WADE

By_____
Stephen R. Wade

---

13

**OPPOSITION OF LAURA FAKHOURY TO WILMINGTON'S MOTION TO ANNUL THE AUTOMATIC STAY**