LAW OFFICES OF STEPHEN R. WADE
Stephen R. Wade CBN 79219
5030 E. 2nd St. Ste. 260 A
Long Beach, CA 90803
PHONE (909) 575-7597
Email srw@srwadelaw.com

Attorneys for: Interested Party
Lara Fakhoury

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# RIVERSIDE DIVISION

In re:

MAJED FAKHOURY

　　　　　　　　DEBTOR.

CASE NO. 6:25-bk-15967 SY

CHAPTER 7

DECLARATION OF BENJAMIN HESTON IN OPPOSITION TO MOTION TO ANNUL THE AUTOMATIC STAY FILED BY WILMINGTON TRUST NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE MFRA TRUST 2015-2

Date:　　November 5, 2025
Time:　　9:30 AM
Ctrm:　　302

1

DECLARATION OF BENJAMIN HESTON IN OPPOSITION TO WILMINGTON MOTION TO ANNUL THE AUTOMATIC STAY

## DECLARATION OF BENJAMIN HESTON

I, Benjamin Heston, declare as follows:

1. I am the attorney for the Debtor. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify thereto.

## BACKGROUND

2. Lara Fakhoury filed her first Chapter 13 case in 2022, and that plan was confirmed. Shortly after confirmation, they secured financial assistance from a family member who wished to help them cure the mortgage default. Debtor's brother, Khalid Fakhoury, has, at times, stepped in to help with the property since his 88-year-old mother lives there. To effectuate this cure outside of the bankruptcy, Lara Fakhoury stopped making plan payments, which resulted in the case's dismissal.

3. **Immediately following the dismissal of the 2022 case, the Fakhourys accepted the family member's assistance and brought the mortgage loan completely current.** At this point, the family's finances stabilized and they were able to make their payments.

4. In 2023, the family's financial stability was again severely disrupted when the Debtor was diagnosed with cancer on two separate occasions. The resulting hospitalizations, recovery time, and medical costs led to a significant increase in family expenses and a simultaneous loss of income. It was this unforeseen medical and financial crisis that directly caused them to fall behind on mortgage payments, necessitating the Chapter 13 filing in early 2025 (Case No. 6:25-bk-13166-SY).

5. At the time of that filing, their income was insufficient to fund a plan, but they proceeded in the good-faith hope that Majed would secure new employment sufficient to meet their payment obligations.

6. When Mr. Fakhoury's employment did not materialize as hoped, the Fakhourys sought financial assistance from friends and family. They successfully gathered substantial funds prior to the confirmation hearing. At that hearing, I requested a continuance on Ms. Fakhoury's behalf, explaining to the Court that they had a recent injection of funds and

1

needed time to pay these funds to the trustee and the mortgage servicer. The Court denied the continuance and dismissed the case.

7. With a foreclosure sale again impending, the Fakhourys continued their scramble to gather funds. Within a few weeks, they secured approximately $70,000. Believing these funds would be sufficient to make payments and cover living expenses for several months while Mr. Fakhoury continued his job search, Lara Fakhoury filed another Chapter 13 case (Case No. 6:25-bk-15107-SY).

8. While the Fakhourys hoped to keep their residence, they were also aware of the significant obstacles. Following the dismissal of the bankruptcy and facing the impending foreclosure, they listed the house for sale in or around July 2025. **The property has received multiple offers, all of which would be sufficient to pay all creditors in full.**

9. The Chapter 7 Trustee, Charles Daff, is aware of these proceedings and the ongoing efforts to sell the Property. I have been informed by the listing broker that an offer is pending, and that on October 24, 2025, the prospective buyer deposited $45,000 into escrow. The Trustee's counsel has indicated that the Estate is prepared to accept this offer to liquidate the property for the benefit of creditors, contingent upon the denial of this motion.

### GOOD FAITH / BAD FAITH

10. At the hearing in Lara Fakhoury's case on the Motion for Reconsideration, the Court noted several concerns regarding the Fakhourys' disclosures. However, as I have found, and I believe the Court will agree, further inquiry shows that the Debtor and Ms. Fakhoury have been acting in good faith throughout these proceedings.

11. At the hearing, the Court noted that Ms. Fakhoury should have been transparent about the fact that Majed's new employment was with a family member. However, the declaration filed in support of the Motion for Reconsideration stated: **"My husband recently began new employment working for his brother Kal."**

2

12. The Court also noted concern that the letter verifying Mr. Fakhoury's employment was not on personalized company letterhead. However, Kal Fakhoury's business does not use formal letterhead in its ordinary course of business. I also felt that the letter that Kal sent me was "lacking" in the sense that it was not on more formal letterhead, but I filed it as-is because I felt that it would have been inappropriate and dishonest to throw together a letterhead design just for the sake of this single document.

13. A concern was raised regarding the change in company names from "E JANS Investment & Development Co." (disclosed in the 2022 case) to "ELJO, LLC" (disclosed in the 2025 case), suggesting this was deceptive. However, the explanation for this is very straightforward and even somewhat endearing. The owner of this real estate investment business, Kal Fakhoury, formed "E JANS" in 2008, naming it after his five children: Elias, Joseph, Amanda, Noha, and Sophia. In 2017, he formed "ELJO", naming it after the first two letters of his sons' names, **EL**ias and **JO**seph, with the intent to operate this new venture with just them. In or around 2023, Kal Fakhoury provided cash gifts to his daughters and discontinued operations under the E JANS entity, and shifted his primary business focus to ELJO.

14. Finally, a concern was noted that the employment letter was signed by "Kal Elias," which was viewed with suspicion and as an attempt to disguise the fact that Kal is a Fakhoury. For business purposes, such as this letter, Khalid Fakhoury goes by the Americanized version of his name "Kal Elias", which is a common practice for people with foreign names doing business in the US. The name Elias was chosen because of the familial significance, given that "Elias" is the name of Kal's son and grandfather.

15. In light these clarifications, the Fakhourys have been open and transparent and have acted in good faith. In Lara Fakhoury's second 2025 case, she had made all required payments and filed all necessary amendments, and the Chapter 13 Trustee was prepared to recommend confirmation. See attached email from Susan Luong. Similarly, in this case, prior to its conversion, Majed Fakhoury was current on all of his obligations, and, at the

341(a) exam[1], the Trustee had indicated that only minor issues remained to be resolved before they would recommend confirmation.

### NOTICE PROVIDED TO MOVANT

16. On August 28, 2025, I provided direct written notice to Darlene Vigil via email, stating that the borrower's "spouse" had filed for bankruptcy and provided the Debtor's name and case number. Attached hereto is a true and correct copy of that email.

17. In addition to providing direct written notice to Movant's counsel, I personally called BDFTW at least eleven times with the explicit and singular purpose of trying to prevent them from conducting a foreclosure sale in violation of the automatic stay. Among these eleven calls, I documented the following conversations with BDFTW:

- On August 26, 2025, at approximately 10:30 AM, I spoke with a representative at BDFTW and confirmed the foreclosure was still on the calendar. I stated that the borrower's husband had filed for bankruptcy and provided the case number. **The representative asked if he had an interest in the property, and I confirmed that he did.** She told me she would forward this information to their bankruptcy department.

- On August 27, 2025, at approximately 10:15 AM, I called BDFTW and spoke with a representative who confirmed they were aware of Mr. Fakhoury's bankruptcy. She stated that she "wouldn't be surprised" if the sale was postponed.

- On August 28, 2025, at approximately 10:45 AM, I spoke with another representative at BDFTW, who I believe identified herself as Serena. She confirmed the sale was still scheduled. I asked if she was aware that the borrower's husband's bankruptcy stayed the sale. She stated that the legal department had reviewed the file and an attorney left a note stating that "Lara's husband is not on the loan, so his bankruptcy filing will not affect [their] foreclosure proceedings."

---

[1] In the three recent bankruptcies, Movant has not attended any of the 341(a) exams.

4

18. In addition to the phone calls referenced above where I took detailed notes, I also called BDFTW repeatedly to inquire as to whether they would be postponing the foreclosure due to the Debtor's bankruptcy filing. Based on my call logs, those calls occurred at the following dates and times:

- August 27, 2025 at 2:09 PM
- August 28, 2025 at 10:55 AM
- August 29, 2025 at 1:33 PM
- September 2, 2025 at 9:54 AM
- September 2, 2025 at 12:48 PM
- September 4, 2025 at 10:47 AM
- September 4, 2025 at 11:47 AM
- September 4, 2025 at 12:32 PM

19. Movant also claims that they were ignorant of the Debtor's interest in the property because "community property" box was not checked on Lara Fakhoury's Schedule A/B. This was an inadvertent clerical error on my part. In my petition software, if a "non-filing spouse" is not added at the time the file is created, the software does not default to marking assets as community property. I sincerely apologize for this oversight. However, as any attorney practicing bankruptcy or family law in California knows, it is exceptionally rare for one spouse to have no interest whatsoever in a long-term family residence. The disclosure of a spouse on Schedule H was more than sufficient to put any reasonable attorney on notice of a community property interest protected by the automatic stay, especially in light of the email notice and no less than eleven phone calls made after Majed's bankruptcy was filed and prior to the foreclosure.

20. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: October 27, 2025

BENJAMIN HESTON

5

# Gmail

Ben Heston <ben@nexusbk.com>

## Re: Fakhoury, Lara (25-15107)
1 message

**Susan Luong** <susanl@rodan13.com>  Mon, Sep 29, 2025 at 9:40 AM
To: Ben Heston <ben@nexusbk.com>

It looks like it should be ready to be confirmed next week.

On Mon, Sep 22, 2025 at 12:02 PM Ben Heston <ben@nexusbk.com> wrote:
> Just checking in on this case. With the husband's new job, the plan can be increased to 100%. If that amended plan is filed and we agree to conduit payments, will the trustee be supporting confirmation? Let me know if anything else is needed.
>
> --
>
> **Benjamin Heston, Esq.**
> Certified Consumer Bankruptcy Law Specialist
> **NEXUS BANKRUPTCY**
> 3090 Bristol Street #400, Costa Mesa, CA 92626
> 19700 Fairchild Road #280, Irvine, CA 92612
> **Tel:** 949.312.1377 // **Fax:** 949.288.2054

--
Sincerely,

Susan J. Luong
Staff Attorney
Certified Bankruptcy Specialist
State Bar of California
Rod Danielson, Chapter 13 Trustee
3787 University Ave.
Riverside, CA 92501
Office: 951-826-8000
Fax: 951-826-8090
Direct Line: 951-826-8038

This e-mail and any other e-mail messages sent by the Chapter 13 Trustee or his staff are for the sole use of the intended recipient(s).These e-mail messages contain information belonging to Rod Danielson, Chapter 13 Trustee. All e-mail messages sent by the Trustee or his staff are privileged or confidential (or both). **Any disclosure, copying, distribution or inclusion in pleadings is prohibited.** Failure to abide by these terms may result in termination of e-mail privileges of the recipient with this office. If you are not the intended recipient or if you received this e-mail in error, please delete. Thank you!

# Gmail

Ben Heston <ben@nexusbk.com>

## Re: Lara Fakhoury
1 message

**Ben Heston** <ben@nexusbk.com>  
To: "Darlene C. Vigil" <DarleneV@bdfgroup.com>

Thu, Aug 28, 2025 at 8:26 AM

Do you know if the sale is still on calendar? Her spouse filed a BK a few days ago (6:25-bk-15967-SY).

On Wed, Aug 20, 2025 at 6:27 PM Darlene C. Vigil <DarleneV@bdfgroup.com> wrote:

> Hi, Ben,
>
> The foreclosure sale is scheduled for 8/28/25.
>
> Darlene C. Vigil
>
> Associate Attorney  (Licensed in California and Oregon)
>
> Barrett Daffin Frappier Treder & Weiss, LLP (California/Nevada/Arizona)
>
> 3990 E. Concours Street, Suite 350
>
> Ontario, California  91764
>
> Main: (626) 371-7000
>
> Direct: (626) 371-7026
>
> Fax: (972) 661-7726
>
> DarleneV@BDFGroup.com
>
> *Part of the BDF Law Group
>
> Barrett Daffin Frappier Turner & Engel, LLP (Alabama/Georgia/Mississippi/Oklahoma/Texas/Wyoming)
>
> Barrett Daffin Frappier Treder & Weiss, LLP (California/Nevada/Arizona)
>
> Barrett Frappier & Weisserman, LLP (Colorado)
>
> 

**PURSUANT TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.**